UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LEEANN A.                                  :
                                           :
v.                                         :      C.A. No. 18-00278-JJM
                                           :
NANCY A. BERRYHILL, Acting                 :
Commissioner of the Social Security        :
Administration                             :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on May 23, 2018 seeking to reverse the Decision of the Commissioner. On November 26, 2018, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (ECF Doc. No. 10). On January 9, 2019, the Commissioner filed a Motion for an Order Affirming the Commissioner's Decision. (ECF Doc. No. 13). Plaintiff filed her Reply to the Commissioner's Motion on February 6, 2019. (ECF Doc. No. 15).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that

Plaintiff's Motion to Reverse (ECF Doc. No. 10) be GRANTED and that the Commissioner's Motion to Affirm (ECF Doc. No. 13) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB on August 16, 2012 (Tr. 208-214) and SSI on June 14, 2012 (Tr. 198-207) alleging disability since December 24, 2011. The applications were denied initially on August 14, 2012 (Tr. 101-108, 109-116) and on reconsideration on December 19, 2012. (Tr. 119-127, 128-136). Plaintiff requested an Administrative Hearing. On September 10, 2013, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. 40-86). The ALJ issued an unfavorable decision to Plaintiff on September 20, 2013. (Tr. 20-39). The Appeals Council denied Plaintiff's request for review on January 9, 2015. (Tr. 8-11). Therefore, the ALJ's decision became final. A timely appeal was then filed with this Court. The Commissioner filed an assented motion to remand Plaintiff's action in this Court (C.A. No. 15-241-ML). Upon remand, the ALJ issued his unfavorable decision on March 9, 2017. (Tr. 551-577). On March 28, 2018, the Appeals Council denied Plaintiff's request to review the 2017 Decision and it became final. (Tr. 545-548). The present action was timely filed by Plaintiff.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in his evaluation of her allergic reactions and/or assessment of her residual functional capacity, and improperly restricted her counsel's right to cross-examine the VE.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's conclusions are supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was

disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's

opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing

an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that

such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination

of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged,

the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and

a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

### A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5. At Step 2, the ALJ determined that anxiety disorder was the lone severe impairment. (Tr. 558). The ALJ found that allergies/asthma and possible anaphylactic reaction were not severe impairments. (Tr. 559). At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (Tr. 560). As to the RFC, the ALJ found that Plaintiff could perform a full range of work at all exertional levels with simple, routine, repetitive, competitive, non-abstract tasks on a sustained basis over an eight-hour workday in a stable work environment that involved performing the same tasks in the same place and around the same people. (Tr. 562). The ALJ therefore determined at Step 5 that Plaintiff could perform other work in the national economy (Tr. 569-570) and was not disabled from her alleged onset date through the date of the decision. (Tr. 570).

### B.    The ALJ's RFC Finding is Not Supported by Substantial Evidence

Plaintiff primarily takes issue with the ALJ's failure to find allergic reactions and asthma to be severe impairments and the ALJ's failure to assign any limitations related to chemical exposure in the RFC.

The first hearing in this matter was held on September 10, 2013. At that hearing, Plaintiff, represented by counsel, and a VE appeared and testified. Upon remand, a second hearing was held on January 11, 2017. (Tr. 578-654). The Appeals Council ordered the ALJ to consider "supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 653). At the 2017 hearing, Plaintiff, represented by counsel, testified telephonically and a VE appeared and testified.

In determining that Plaintiff suffered from a medically determinable allergy impairment at Step 2 in the 2013 decision, the ALJ noted that, "[t]here is no chemical allergy test for her impairment. This has allegedly been happening to her for most of her life." (Tr. 28). The ALJ indicated that Plaintiff carries an EpiPen and had used it "more than twenty times" while employed at a pizza restaurant. Id. The ALJ noted her fear of exposure to cologne and perfume and that her treating physician stated she could not be "around perfumes, cologne, or air fresheners which could cause life threatening reactions." (Tr. 29-30). The ALJ ultimately found in 2013 that Plaintiff had a "possible anaphylactic allergy to perfumes, cologne and room fresheners," and in making his RFC determination, the ALJ imposed a limitation that Plaintiff's workspace not "significantly expose her to perfume, cologne, or air fresheners." (Tr. 28). In reaching that RFC finding, the ALJ indicated that it was "unclear" whether Plaintiff had a "panic disorder causing the problem or whether she has true environmental allergies triggering the attacks." (Tr. 29). The ALJ also indicated that Dr. Zwetchkenbaum, a respiratory specialist, had "raised serious questions about whether [Plaintiff] had fear creating panic attacks rather than true anaphylaxis," but that her treating physician indicated that exposure to chemicals could cause "life threatening

-13-

reactions." (Tr. 29-30). The ALJ stated that Plaintiff has a "significant phobia" to possible exposure, (Tr. 30); and that she experiences "significant anxiety" regarding same. (Tr. 26). Despite referring to it as a possible allergy, the ALJ found at Step 2 that Plaintiff had established a medically determinable allergy impairment. Id.

In the 2017 Decision, the ALJ noted two allergic reactions had occurred since the 2013 Decision, (Tr. 563) and that Plaintiff had used her EpiPen once in 2014. The ALJ placed "great weight" upon the testimony of Dr. Zwetchkenbaum who evaluated Plaintiff in 2012 and "felt that the claimant's symptoms were more likely the result of fearing anaphylaxis creating a panic attack." (Tr. 564). The ALJ's 2017 Decision contains a Step 2 finding that Plaintiff has only an "anxiety disorder" and not allergies. (Tr. 558). The ALJ also declined to include a restriction in RFC for exposure to "perfume, cologne, or air fresheners." (Compare Tr. 28 with Tr. 562). Despite the reversal in the second Decision, the 2017 Decision contains the same basic reasoning and language as the 2013 Decision, indicating that it is "unclear" if Plaintiff's "attacks" are caused by a panic disorder or true environmental allergies. (Tr. 29, 558). Even though the ALJ finds it to be "unclear" in both decisions whether allergies or panic is the root cause of the attacks, the ALJ reverses course and finds that Plaintiff does not have a medically determinable allergic condition at Step 2 of the 2017 Decision.

These positions cannot be reconciled. In fact, in the 2017 Decision, the ALJ still notes the history of an exposure phobia. (Tr. 566). It is evident that the ALJ determines that her anxiety and her "allergic" reactions are intertwined, yet the ALJ does not directly confront the interplay. For example, the ALJ recounts that "claimant's treatment records for

her allergic reactions document that she experiences anxiety due to her allergies…it has been posited that her allergic reactions may also occur as a symptom of panic.…" (Tr. 566). In 2012, Dr. Pittenger (a consulting psychologist) examined Plaintiff and found that her presentation was suggestive of someone with a phobia of allergic reactions and he assessed a panic disorder and a GAF of 48, suggesting serious symptoms. (Tr. 423-427). He indicated that comprehensive outpatient mental health treatment was required. (Tr. 427).

The ALJ concedes that Dr. Mary Mumford Haley, her primary care physician, "recommended avoiding allergens in the workplace and being in an isolated workplace and wearing a mask to reduce exposure." (Tr. 559-560). The ALJ afforded this "minimal weight," however, because she offered "no findings or test results to support that opinion and clearly indicated that it was based upon the claimant's subjective complaints and her review of some medical records." (Tr. 560). Plaintiff persuasively argues that "[w]ith the amount of precautions" she takes to avoid potential allergens, "less severe objective findings is entirely consistent with her conditions." (ECF Doc. No. 15 at p. 2).

In the end, the record shows that Plaintiff has a very poor work history and has sought and received significant medical attention for her claimed allergies. The reactions Plaintiff experiences, whether caused by allergies or anxiety, indisputably relates to exposure to certain chemical agents, and exposure is not addressed in the ALJ's RFC determination. Plaintiff's allergies are either medically supported and the RFC should include appropriate environmental exposure restriction, or she has a phobia/panic/anxiety condition that causes panic attacks and other actual symptoms due to fear of exposure and a resulting reaction. Thus, the ALJ erred by failing to assess a severe impairment regarding allergies and a resulting RFC limitation on exposure, OR a limitation on exposure related to her

anxiety/panic disorder. By doing neither, the ALJ ducks the question he describes as "unclear" in both decisions. If it is unclear, the ALJ should have further developed the record or sought input from a medical expert.

The Commissioner's attempt to close the hole by relying upon the ALJ's alternate Step 5 finding also fails. (Tr. 559, n.4). In this alternate finding, the ALJ assumes there is a medical allergy and that wearing a mask at work would solve the issue and allow work. However, Plaintiff's treating physician actually described the functional limitation as both being in an isolated area <u>and</u> wearing a mask. (Tr. 905). If she has a phobia, by definition, it is an irrational fear. A rational person may be comfortable that a mask may provide enough protection while someone with an irrational fear may not. If the ALJ got input from a psychiatrist, he could get an informed answer to that query instead of making unsupported lay conclusions. When asked at the hearing about masks, Plaintiff testified that it is hard to breathe with a mask, and the exposure still "goes through my skin pores." (Tr. 595). She also testified at the first hearing that masks did not help – her eyes still swell, it just buys a little time to get out, and the reaction would "still happen to me." (Tr. 57). Therefore, the alternate Step 5 finding based solely on wearing a mask also does not resolve the ultimate issue of medical allergy or mental impairment.

Plaintiff's second argument is that the ALJ erred in preventing her attorney from fully cross-examining the VE. Plaintiff's attorney sought to ask the VE about the "risk of a liability in the mind of the employer" that may arise as a consequence of an employee being "removed by emergency medical services" following an allergic reaction in the workplace. (Tr. 601). The ALJ did not allow the question, after finding it was "ambiguous" and "too vague." <u>Id.</u> Plaintiff asserts that the failure to allow this question was plain error because

the question was "specific and related directly to events in evidence." (ECF Doc. No. 10 at p. 16). The Commissioner asserts that Plaintiff has neither "alleged nor established" that the VE's answer to that specific question "would have materially affected the outcome of the decision." (ECF Doc. No. 13-1 at p. 20). In addition, the question is not related to a functional limitation and its impact on an individual's ability to perform a particular job. It effectively asks the VE if an employer might fire an employee, due to liability concerns, who suffers an allergic reaction at work and is taken away by rescue. Such a question invites the VE to improperly speculate about a hypothetical employer's compliance with disability discrimination statutes and the duty to reasonably accommodate a qualified individual with a disability as defined in such statutes. The question as framed was improper, and the ALJ did not err in disallowing the question. Furthermore, the ALJ invited Plaintiff's counsel to "ask something more specific" and counsel chose not to do so and moved on. Accordingly, there is no reversible error in the ALJ's evidentiary ruling as to the question posed to the VE by Plaintiff's counsel.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF Doc. No. 10) be GRANTED and that the Commissioner's Motion to Affirm (ECF Doc. No. 13) be DENIED. I further recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right

to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, In. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

 /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 25, 2019